**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| Amy Stevens and | ) | |
| Jane Doe 1, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No. 1:18-cv-3015-JRS-MJD |
| | ) | |
| v. | ) | |
| | ) | |
| USA Diving, Inc., | ) | |
| Indiana Diving Academy, Inc., d/b/a RipFest, | ) | |
| John Wingfield, Johel Ramirez Suarez, and | ) | |
| Arcadia Church Events & Sports, LLC | ) | |

---

**FOURTH AMENDED COMPLAINT AND JURY DEMAND**

---

**PARTIES**

**The Plaintiffs**

1.      Plaintiff Amy Stevens is an individual, and is a citizen of the State of Michigan.

2.      Plaintiff Jane Doe 1 is an individual, and is a citizen of the State of Florida.

**The Defendants**

*Defendant USA Diving*

3.      The Ted Stevens Amateur Sports Act ("The Sports Act") gives the USOC the express authority to authorize National Governing Bodies ("NGBs") in all Olympic Sports.

4.      Defendant USA Diving ("USA Diving") is the USOC-recognized and USOC-regulated NGB for the sport of diving.

5.      USA Diving was at all times herein mentioned, and still is, an Ohio corporation with its principal place of business in the city of Indianapolis, Indiana.

6.　　　USA Diving has appeared through counsel in this matter.

**Defendant RipFest**

7.　　　Defendant Indiana Diving Academy, Inc., which does business as RipFest ("RipFest") is an Indiana corporation doing business in Indiana and a citizen of Indiana.

8.　　　RipFest operates a residential diving program at 108 Olive Street, Arcadia, Indiana 46030.

9.　　　RipFest has appeared through counsel in this matter.

**Defendant John Wingfield**

10.　　　John Wingfield is the President of RipFest residential diving facility.

11.　　　John Wingfield has been an agent, servant, or employee of USA Diving since 1998.

12.　　　John Wingfield opened the first USA Diving National Training Center.

13.　　　In 2009, John Wingfield became the head coach of USA Diving.

14.　　　John Wingfield was the official head coach of the 2008 Olympic USA Diving team.

15.　　　John Wingfield is a four-time United States Olympic Committee Coach of the Year for diving.

16.　　　John Wingfield was also named the United States Olympic Committee Developmental Coach of the year for all Olympic Sports in 2009.

17.　　　At all relevant times, Defendant Wingfield and Defendant RipFest operated a residential diving program.

18.　　　John Wingfield has appeared through counsel in this matter.

19.　　　John Wingfield is a citizen of the State of Indiana.

**Defendant Johel Ramirez Suarez**

20.　　　Defendant Johel Ramirez Suarez is a citizen of Venezuela.

21.     Johel Ramirez Suarez will be served with the Fourth Amended Complaint in accord with Fed. R. Civ. P. 4 and this Court's Order [Doc. No. 124].

### *Defendant Arcadia Church Events & Sports, LLC*

22.     Defendant Arcadia Church Events and Sports, LLC ("Arcadia") is a single-member Limited Liability Company with its principal place of business in Arcadia, IN.

23.     Defendant John Wingfield is the sole principal and manager of Arcadia, and the sole member, and thus Arcadia is a citizen of Indiana.

24.     At all times relevant, Arcadia owned and operated properties used by Defendant RipFest including a commercial building located at 108 South Olive Street Arcadia, IN 46030.

25.     At all times relevant, the properties owned and operated by Arcadia were the home of Defendant RipFest.

## JURISDICTION AND VENUE

26.     This Court has diversity jurisdiction because all Plaintiffs are diverse from all Defendants and the amount in controversy exceeds the jurisdictional minimum of $75,000.

27.     Venue is appropriate in this district because Defendants USA Diving and RipFest have their corporate headquarters in this district, Defendant Wingfield is a citizen and resident of this district, and a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in this district.

## FACTS COMMON TO ALL COUNTS

### Overview of the Sports Act, the USOC, and Its NGBs, Clubs, and Coaches

28.     Olympic sports in the United States have a long history. Congress originally chartered the United States Olympic Association in 1950 to organize and promote the United

States' participation in international Olympic competition. This spun into the United States

Olympic Committee (the "USOC") in 1964.

29.     In 1978, concerned with "the disorganization and the serious factional disputes that

seemed to plague amateur sports in the United States," Congress enacted the Ted Stevens Olympic

and Amateur Sports Act ("the Sports Act"), P.L. 95–606 (now codified at 36 U.S.C. § 220501, *et*

*seq*.), to codify the purpose and powers of the USOC, and to create national governing bodies

("NGBs") for each Olympic sport.

30.     Thus, the Sports Act controls the USOC and all of its NGBs.[1]

31.     As of 2018, there are 47 NGBs (one for each Olympic sport), ranging from USA

Archery to USA Wrestling.

32.     USA Diving is one of 47 NGBs recognized by the USOC under the Act that

sponsors or arranges amateur athletic competition.[2]

33.     USA Diving selects divers to compete in the Olympic Games, World

Championships, and other competitions.

34.     USA Diving submits the names of its selected athletes to the USOC for approval

prior to international competitions, including but not limited to the Olympics.

35.     Athletes who seek to become U.S. Olympians in diving must be members of USA

Diving.

36.     Athletes who seek to participate in USA Diving-sanctioned events must become

USA Diving members.

---

[1] Title 36 U.S. Code, chapter 2205 organizes and defines the USOC as a "federally chartered corporation." 36 U.S.C. §§ 220501(b)(6), 220502(a).
[2] *Id.* §§ 220501(b)(3), (8).

37.     Under the Sports Act, USA Diving may sanction an organization to hold or sponsor competition if proper safety precautions have been taken to protect the personal welfare of athletes, and the organization requesting sanction implements and abides by policies and procedures to prevent abuse, including emotional, physical, and child abuse, of amateur athletes.[3]

38.     The Sports Act allows the USOC to require NGBs to adopt policies and procedures to ensure the physical safety of athletes.

39.     For example, in 1999, the USOC required all NGBs to purchase insurance to specifically cover the sexual assaults of any minor.

40.     Since 1999 or before, USA Diving has maintained liability insurance for the sexual abuse of its members.

41.     If NGBs did not purchase sexual abuse insurance, their members would not be permitted to use the USOC training facilities in Chula Vista, California; Lake Placid, New York; Marquette, Michigan; or Colorado Springs, Colorado.

42.     USA Diving provides specific sexual molestation insurance to its clubs.

43.     USA Diving provides specific sexual molestation insurance coverage to its coaches.

44.     USA Diving provides or provided specific sexual molestation insurance coverage to Johel Ramirez Suarez.

45.     USA Diving provides specific sexual molestation insurance coverage to the RipFest diving club.

46.     Plaintiffs are among the intended beneficiaries of USA Diving sexual abuse insurance.

---

[3] *Id.* § 220525(F), (G), added Feb. 14, 2018.

47.     Jane Doe 1 and other employees of RipFest were made aware, and relied upon, the fact that USA Diving maintained insurance covering activities taking place at RipFest.

48.     USA Diving representatives routinely visited the RipFest facilities in Arcadia, Indiana.

49.     Jane Doe 1 and other RipFest employees routinely visited, with Wingfield and on behalf of RipFest, the USA Diving headquarters in Indianapolis.

50.     USOC maintains authority over the NGBs, but each NGB has complete and final control over its sport in the United States.

51.     Based on its exclusive control over diving as a sport, its membership contracts, and its public display of its banner atop swimming pools, USA Diving is responsible for the conduct of its members (clubs, coaches, and athletes) and owes a duty of care to the divers.  USA Diving has complete and final control over the sport of diving in the United States.

### USA Diving's Willful Blindness to Sexual Abuse and Exploitation of Its Divers.

52.     From at least 2015 to 2017, up and until it permanently banned Suarez, USA Diving and its agents-- RipFest and John Wingfield--knowingly benefitted from USA Diving's relationship with Suarez, who was a USA Diving certified coach, recruiting talented divers, including Plaintiffs, to USA Diving clubs and transporting them to USA Diving sanctioned competitions around the county.

53.     USA Diving benefitted from this venture with Suarez with knowledge or in reckless disregard of the fact that they were engaging in sexual abuse of Plaintiffs because they had authority and operated under the USA Diving banner.

54.     It was only because Suarez was a USA Diving coach that he was able to coerce Plaintiffs to provide forced sexual services.  Plaintiffs were vulnerable and striving to reach their

Olympic dream or pursue their career passions, they were pursuing college scholarships, and they were tantalized by the prospect of sponsorships.

55.     USA Diving participated in this venture by receiving membership fees from Plaintiffs while also acting as the travel agent and commercial funder for Suarez in the sexual exploitation of young female divers.  Plaintiffs were wearing Team USA on their uniforms while competing for USA Diving and were required to obey the sexual demands of their coach.

56.     If Plaintiffs wanted to stay on Team USA and fulfill their childhood dreams to compete or coach as Olympians for the United States, they had no choice but to submit to the coach's sexual demands.

57.     Because Suarez was a USA Diving-certified coach and possessed the apparent and actual authority to decide who would ultimately succeed in the sport, he was able to sexually abuse and exploit Plaintiffs with impunity.

58.     Suarez used his authority as a USA Diving coach to abuse Plaintiffs.

59.     Suarez's actions were taken on the behalf of USA Diving, such that when he sexually assaulted and raped Plaintiffs he did so in his capacity as an official coach of Team USA's Diving team.

60.     Each USA Diving member, including Plaintiffs herein, had to abide by the rules and regulations of the USOC and USA Diving when competing or coaching in USA Diving sanctioned events.

61.     USA Diving members, including Plaintiffs, also had to comply with the drug testing protocols and procedures of the USOC controlled United States Anti-Doping Administration.

62.     To be a USA Diving member, such as the Plaintiffs herein, everyone must pay dues to USA Diving.

63.     Part of the dues paid by Plaintiffs went towards the financial grants that USOC and USA Diving awarded to Wingfield, Suarez, and the clubs for which they coached.

64.     Parents make significant investments of money for their children, many of whom are Olympic hopefuls, to train at "prestigious" clubs, like RipFest, and under coaches, like Suarez, who are authorized and approved by USA Diving.

### RipFest and Wingfield Use Reputation Bestowed by USA Diving

65.     The Indiana Diving Academy, known as RipFest, is a USA Diving-certified club.

66.     RipFest is based in Arcadia, Indiana and operates clubs in Indiana, Michigan and Ohio.

67.     RipFest is owned and operated by Defendant John Wingfield.

68.     John Wingfield and RipFest financially benefitted from Suarez's participation in USA Diving.

69.     John Wingfield was the 2008 USA Diving Olympic Coach.

70.     RipFest used Wingfield's "celebrity" status and the authority bestowed upon him by USA Diving to gain the trust and admiration of Olympic-hopefuls and their parents.



71.     Wingfield's prestige as the 2008 Olympic coach allured families to RipFest and lead them to believe their children were being trained at an elite facility by elite coaches, and that they would be Olympic-hopefuls and have a shot at touching the Olympic dream.

72.     USA Diving has regularly promoted and advertised on behalf of John Wingfield and his diving clubs.

73.     Under John Wingfield, from 2015 to 2017, Suarez was the agent, servant, and/or employee of RipFest.

74.     At all relevant times, Suarez was the agent, servant, and/or employee of USA Diving because he coached USA Diving members at USA Diving member clubs and traveled with these teams to USA Diving-sanctioned events.

75.     Suarez was affirmatively cloaked with both the actual and apparent authority to represent USA Diving.

76.     Suarez used his power as a USA Diving coach to manipulate Plaintiffs so that he could sexually assault them.

77.     By 2015, RipFest and John Wingfield had received complaints that Suarez was routinely sexually exploiting, assaulting, and raping multiple female athletes that were entrusted into the protection (and bound by the commercial terms of) USA Diving, RipFest and John Wingfield.

**Sexual Abuse, Exploitation, and Forced Labor of Plaintiff Amy Stevens**

78.     In the fall of 2015, while Suarez was coaching at RipFest, Amy Stevens (Amy) was enticed, recruited, or otherwise induced to move from another state to join the program at RipFest.

79.     Amy was approximately 16 years old when she joined RipFest.

80.     During the winter, RipFest holds diving practice at local pools, which RipFest rents from local public-school districts.

81.     RipFest has rented pools from at least North Central High School, Fishers High School, Noblesville High School, and Hamilton Heights High School.

82.     While Amy stretched at RipFest practices at various pools in Marion and Hamilton Counties, Defendant Suarez would help Amy stretch.

83.     As time progressed, Suarez began moving his hands further down Amy's thighs while helping her stretch.

84.     By the end of 2015, Suarez was placing his hands and fingers over Amy's swimsuit, directly on her vulva.

85.     Suarez inappropriately touched and rubbed Amy's vulva approximately a dozen times in 2015 and 2016.

86.     On each of the various occasions of sexual assault, Suarez inappropriately touched

and rubbed Amy's vulva for varying amounts of time.

87.     Defendants Wingfield and Ripfest were on notice of multiple incidents of groping and sexual assault by Defendant Suarez as early as June 2015, but took no action to stop Suarez's behavior or protect Amy.  Suarez's assaulted Amy multiple times after Ripfest and Wingfield were on notice of Suarez's assaults.

88.     Suarez pled guilty to touching the vulva of another RipFest diver when he was arrested in Hamilton County in November 2017.[4]

**Sexual Abuse, Exploitation, and Forced Labor of Plaintiff Jane Doe 1**

89.     At all relevant times, Plaintiff Jane Doe 1 was an employee of RipFest.

90.     At all relevant times, Jane Doe 1 was a sanctioned and licensed USA Diving Coach.

91.     Jane Doe 1 began working full-time for RipFest in April 2015.

92.     Shortly after Jane Doe 1 began her full-time employment with RipFest, Suarez began inappropriately touching her in a sexual manner without her consent while on the pool deck at the Forest Park Aquatic Center in Arcadia, Indiana from which RipFest primarily operated.

93.     During this time, Suarez also consistently made inappropriate sexual comments to and about Jane Doe 1.

94.     These occurrences initially happened to Jane Doe 1 a couple of times per week, starting in April, 2015.

95.     Jane Doe 1 first reported these occurrences in June or July of 2015 to John Wingfield, as well as to Chris Zukas, another RipFest coach, and others, after which point Jane Doe 1 complained to Wingfield, Zukas and others about this behavior repeatedly.

96.     These conversations between Jane Doe 1 and both John Wingfield and Chris Zukas

---

[4] Suarez pled guilty to three counts of battery, *see* 29C01-1711-F5-8587.

about Suarez's inappropriate pool deck behavior occurred on the pool deck of the Forest Park Aquatic Center and at various meetings in and around the RipFest camp facilities, all in Arcadia, Indiana.

97.    Wingfield's initial response to Jane Doe 1's verbal statements concerning Suarez's unconsented assaults and touching was to ignore her concerns and state that he "Doesn't deal with drama."

98.    Jane Doe 1 repeated these concerns to John Wingfield, Chris Zukas, and others, from the summer of 2015 forward through the summer of 2017, during which time the inappropriate touching on the pool deck intensified, becoming a daily occurrence.

99.    John Wingfield never took any action, either directly with Suarez or otherwise, to prevent, protect, or otherwise cause the cessations of Suarez's unconsented touching of Jane Doe

100.    Jane Doe 1 was concerned that she would lose her job if she reported the incidents outside of RipFest.

101.    While Jane Doe 1 worked for RipFest, there were no other employees or managers of RipFest, other than Wingfield, who had the authority to take any action to prevent or curtail Suarez's unconsented sexual touching.

102.    In July or August of 2016 Jane Doe 1 awoke to Suarez getting into her bed in the RipFest dormitory in Arcadia, Indiana, whereby he attempted to have sex with her and sexually assaulted her.

103.    Jane Doe 1 was able to force Suarez from her bed, after repeatedly yelling at him to stop, but not until after he had digitally penetrated her.

104.    Jane Doe 1 informed John Wingfield of this incident within a couple of weeks, during a conversation that took place on the pool deck at the Forest Park Aquatic Center, to which

John Wingfield responded by stating that "He [Suarez] is Venezuelan, that's just how they are" and was generally dismissive of Jane Doe 1's report of the incident.

105.   After this dormitory room assault, and after Jane Doe 1 informed Wingfield of it, Jane Doe 1 also informed Chris Zukas and others of the incident.

106.   After this dormitory room assault, Suarez continued to inappropriately interact with Jane Doe 1 and touch her without consent in a sexual manner on the pool deck.

107.   In October of 2016, Suarez again entered Jane Doe 1's RipFest dorm room in Arcadia while she was sleeping, and was again awakened as he got into her bed and again attempted to have sex with her.

108.   Jane Doe 1 was able to again force Suarez from her bed.

109.   Jane Doe 1 reported this second dormitory assault incident within a week to John Wingfield, during a conversation which she believes took place outside of her room in the RipFest dormitory.

110.   During this conversation Wingfield again stated that "this is just how Venezuelans are" and that he "doesn't deal with drama." Wingfield again did not take Jane Doe 1's report seriously.

111.   After informing Winfield, Jane Doe 1 also informed Chris Zukas and others of this second dormitory room assault.

112.   Suarez's behavior and unconsented sexual touching continued on the pool deck and dryland center at Forest Park Aquatic Center, and in the RipFest dormitory, until Jane Doe 1 ceased her employment with RipFest in August of 2017.

113.   Thus, by June or July of 2015 at the latest, John Wingfield and RipFest were specifically aware that Suarez had assaulted Jane Doe 1 via unconsented sexual touching on the

pool deck of the Forest Park Aquatic Center.

114.    By August 2016 Wingfield and RipFest were aware that Suarez had forced his way into Jane Doe 1's dormitory, attempted to have sex with her, and sexually assaulted her.

115.    RipFest and John Wingfield knew or were recklessly blind to the fact that Suarez presented a clear and present danger to young female athletes.

116.    Not a single person at RipFest or USA Diving took any action to stop Suarez's abuse of young women.

117.    USA Diving knew or was willfully blind to the fact that Suarez presented a clear and present danger to young female athletes.

### Law Enforcement Finally Intervenes to Stop Suarez

118.    In the summer of 2017, Suarez began to stretch another minor diver at RipFest practices.

119.    As summer turned to fall in 2017, Suarez moved his hands up her legs.

120.    By the fall of 2017, Defendant Suarez was placing his hands on her vulva.

121.    This diver complained to her teammates at RipFest.

122.    She complained to Defendant John Wingfield about Suarez touching her inappropriately while stretching.

123.    Defendants Suarez and Wingfield ignored her complaints.

124.    This diver then called her parents, who contacted Hamilton county law enforcement in November 2017.

125.    A member of the media contacted North Central High School and RipFest prior to Suarez's arrest to inquire about allegations of sexual abuse against Defendant Suarez in November 2017.

126.    Defendant John Wingfield and Defendant Suarez were both approached by administrators at North Central High School.

127.    Defendant Wingfield denied any knowledge of complaints against Defendant Suarez when questioned by North Central High School officials.

128.    Defendant Wingfield took no action against Defendant Suarez after the media inquiry into Defendant Suarez.

129.    Defendant Suarez was arrested and charged with 32 felony counts of child sexual abuse on November 29, 2017, in *State of Indiana v. Ramirez Suarez,* 29C01-1711-F5-008587.

130.    Defendant Suarez sexually assaulted at least 5 teenage divers while he was a USA Diving certified coach.

131.    Subsequent to his arrest, USA Diving placed Suarez on the "permanently ineligible for membership" list.

132.    At no point did USA Diving make efforts to inquire about or ensure the welfare of his victims and other divers. USA Diving did not offer therapy, counseling or any psychological help for the young women that were abused, despite the fact it allowed Suarez access to these women and ignored the complaints of his abuse for months.

## CLAIMS FOR RELIEF

### COUNT 1
**Battery**
*By Jane Doe 1 Against Defendant Ramirez Suarez*

133.    Jane Doe 1 realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

134.    Via numerous occurrences from April 2015 through August of 2017, including two egregious dormitory room sexual assaults in August and October of 2016, Suarez acted with intent

to cause harmful or offensive contact with Jane Doe 1.

135.    Via numerous occurrences from April 2015 through August of 2017, including two egregious dormitory room sexual assaults in August and October of 2016, Suarez did cause harmful or offensive contact with Jane Doe 1.

136.    Suarez's sexual assaults of Jane Doe 1 caused damages to Jane Doe 1.

137.    The amount of those damages shall be determined by a jury and are greater than seventy-five thousand dollars ($75,000.00).

## COUNT 2
### Battery
*By Amy Stevens Against Defendant Ramirez Suarez*

138.    Amy realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

139.    From 2015 through 2017, Suarez acted with intent to cause harmful or offensive contact with Amy Stevens.

140.    Suarez sexually assaulted Amy Stevens, then a minor, approximately twelve to twenty times while Amy Stevens was an athlete at RipFest.

141.    Suarez's sexual assault of Amy Stevens was harmful and offensive and caused damages to Amy Stevens.

142.    The amount of those damages shall be determined by a jury and are greater than seventy-five thousand dollars ($75,000.00).

## COUNT 3
### Negligence and Gross Negligence
*By Plaintiffs against USA Diving*

143.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

16

144.   USA Diving certifies, credentials, disciplines, insures, and ultimately has control over its member coaches.

145.   USA Diving has a duty to promulgate policies and procedures to create a safe environment for its athlete members.

146.   USA Diving breached its duties when it failed report complaints of sexual abuse and/or harassment to law enforcement authorities in Indiana.

147.   USA Diving breached its duties when it failed to investigate coaches about whom it had received complaints of sexual misconduct.

148.   USA Diving failed to investigate multiple complaints of sexual misconduct by coaches at RipFest.

149.   USA Diving failed to investigate multiple complaints of sexual misconduct by athlete members against Defendants Suarez.

150.   USA Diving failed to take any sort of action against RipFest coaches when it learned that multiple member athletes made allegations against RipFest coaches, including Suarez.

151.   USA Diving failed to timely implement the policies and procedures concerning the prevention, reporting, and investigation of athlete sexual abuse mandated by the USOC Safe Sport Program.

152.   USA Diving could have taken action against Suarez, instead it did nothing to stop Suarez from sexually assaulting young female members of USA Diving in Indiana.

153.   USA Diving acted willfully and wantonly violated its duties to Plaintiffs and thereby engaged in grossly negligent behavior. It was well known to them that sexual abuse was likely to occur and that Plaintiffs would be sexually abused and assaulted.

154.   Because of multiple breaches of duty by USA Diving, Plaintiffs were individually

abused and exploited by USA Diving certified member coaches Suarez. There is a direct causation between the sexual abuse and exploitation they suffered and USA Diving's negligence and gross negligence.

155.    Plaintiffs suffered damages in an amount to be determined by a jury (including punitive damages), which damages are greater than seventy-five thousand dollars ($75,000.00), as a result of USA Diving's negligence and gross negligence.

**COUNT 4**
**Negligence and Gross Negligence**
*By Plaintiffs against John Wingfield and RipFest*

156.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

157.    Defendants Wingfield and RipFest employed Defendants Suarez.

158.    Defendants Wingfield and RipFest continued to employ Defendant Suarez after Jane Doe 1 complained to Defendant Wingfield that Defendant Suarez tried to sexually assault her in RipFest housing.

159.    Defendants Wingfield and RipFest owe their athletes a duty to maintain a training and competition environment that is reasonably safe.

160.    By ignoring and dismissing these complaints of sexual assault and exploitation by Suarez, Defendants Wingfield and RipFest breached their duty to Plaintiffs.

161.    Wingfield and RipFest acted willfully and wantonly violated their duties to Plaintiffs and thereby engaged in grossly negligent behavior. It was well known to them that sexual abuse was likely to occur and that Plaintiffs would be sexually abused and assaulted.

162.    Because of multiple breaches of duty by Defendants Wingfield and RipFest, Plaintiffs were sexually abused and exploited. There is a direct causation between the sexual abuse

and exploitation they suffered and Wingfield and RipFest's negligence and gross negligence.

163.    Plaintiffs suffered damages in an amount to be determined by a jury (including punitive damages), which damages are greater than seventy-five thousand dollars ($75,000.00), as a result of Wingfield and Ripfest's negligence and gross negligence.

## COUNT 5
### Negligent Infliction of Emotional Distress
*By Jane Doe 1 and Amy Stevens against USA Diving, Wingfield, and RipFest*

164.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

165.    Defendants each owed Amy and Jane Doe 1 a duty to provide a safe environment to coach and participate in the sport of diving.

166.    Defendants breached this duty when they failed to take action against Suarez when they learned of his assaults of Jane Doe 1 in 2015.

167.    Defendants' breach caused Jane Doe 1 and Amy to be physically assaulted by Suarez after May 2015.

168.    Those subsequent assaults led to Jane Doe 1 and Amy suffering severe emotional and physical injuries.

169.    Plaintiffs suffered damages in an amount to be determined by a jury, which damages are greater than seventy-five thousand dollars ($75,000.00), as a result of Defendants' actions.

## COUNT 6
### Negligence and Gross Negligence
*By Plaintiffs*
*Against Arcadia*

170.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

171.     Defendant, through its sole principal and manager Defendant Wingfield, owned and operated properties used by Defendant Ripfest including a commercial building located at 108 South Olive Street Arcadia, IN 46030.

172.     Arcadia owed a duty to the athletes training at the Arcadia's building to maintain a reasonably safe environment.

173.     Arcadia was on actual or constructive notice of multiple complaints of sexual assault at its properties that were used by Ripfest through its sole principal and manager Defendant Wingfield as early as June of 2015.

174.     Despite the multiple complaints, Arcadia took no action and dismissed the complaints through its sole manager and principal Defendant Wingfield.

175.     By ignoring these complaints of sexual assault Arcadia breached its duty to Plaintiffs.

176.     Defendant Arcadia acted willfully and wantonly in violating its duties to Plaintiffs and thereby engaged in grossly negligent behavior. It was well known to it that sexual abuse was likely to occur and that Plaintiffs would be sexually abused and assaulted.

177.     Because of multiple breaches of duty by Defendant Arcadia, Plaintiffs were sexually abused and exploited. There is a direct causation between the sexual abuse and exploitation they suffered and Arcadia's negligence and gross negligence.

178.     Plaintiffs suffered damages in an amount to be determined by a jury (including punitive damages), which damages are greater than seventy-five thousand dollars ($75,000.00), as a result of Arcadia's negligence and gross negligence.

### DEMAND FOR JURY TRIAL

Plaintiffs are entitled to, and hereby demand, a jury trial in this matter.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court will:

a. Enter judgment against Defendants, jointly and severally, in such amounts as will fully and adequately compensate Plaintiffs for the damages they have suffered, in an amount to be determined at trial, which amount is not less than seventy-five thousand dollars ($75,000.00);

b. Award Plaintiffs punitive damages against Defendants, jointly and severally, in an amount to be determined by the jury for Defendants' violations of law, which amount is not less than seventy-five thousand dollars ($75,000.00);

c. Award Plaintiffs pre-judgment and post-judgment interest;

d. Award Plaintiffs their actual expenses of litigation, including reasonable attorney's fees;

e. Award Plaintiffs injunctive relief that requires the USA Diving to put in place (and fund) supervision and compliance protocols that actually prevent, uncover, and stop the sexual abuse and exploitation of USA Diving members;

f. Award Plaintiffs such other and further relief as the Court deems just and proper.

> Respectfully submitted,
>
> */s/ Jeff Gibson*
> Jeff Gibson, #22362-49
> Wagner Reese, LLP
> 11939 N. Meridian Street, Suite 100
> Carmel, IN 46032
> Attorney for Plaintiff, Amy Stevens
>
> */s/ Joseph L. Mulvey*
> Joseph L. Mulvey, #30052-49
> Mulvey Law LLC
> 133 W. Market Street, No. 274
> Indianapolis, IN 46204

Attorney for Plaintiff, Jane Doe 1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via the Court's

ECF electronic filing system on this 10th day of October, 2019, and on the following via U.S.

Mail.

Arcadia Church Events & Sports, LLC
c/o Tania Wingfield
12728 Portage Way
Fishers, IN 46038

Johel Ramirez Suarez
1215 W. Village Main Dr.
Apt. 331
West Valley City, UT 84119-1862

*/s/ Jeff Gibson*
Jeff Gibson, #22362-49
Wagner Reese, LLP
11939 N. Meridian Street, Suite 100
Carmel, IN 46032
Attorney for Plaintiff, Amy Stevens

*/s/ Joseph L. Mulvey*
Joseph L. Mulvey, #30052-49
Mulvey Law LLC
133 W. Market Street, No. 274
Indianapolis, IN 46204
Attorney for Plaintiff, Jane Doe 1